UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MANHATTAN COURTHOUSE

| | |
|---|---|
| Eboni Forbes, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> - against - <br><br> Kraft Heinz Foods Company, <br><br> Defendant | 1:23-cv-00007 <br><br><br> Class Action Complaint <br><br> Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Kraft Heinz Foods Company ("Defendant") manufactures, markets, and sells apple juice with "All Natural Ingredients" and "No Artificial Colors, Flavors or Preservatives" under the Capri-Sun brand ("Product").




2. Market research firm Mintel has shown that 84 percent of Americans buy foods with "free from" claims, because they are seeking foods that are more natural and less processed.

3. Over forty percent of consumers believe foods with "free from" claims are healthier and safer than foods without such a claim.

4. Representing a product as not having preservatives is valued by over seventy percent of consumers.

5. According to a 2015 Nielsen survey, ninety percent of Americans are willing to pay more for foods made without preservatives, because they believe they are healthier and less harmful to them.

6. A preservative is something that preserves or has the power of preserving, i.e., to protect against decay, discoloration, or spoilage.

7. A chemical preservative is any chemical that when added to food, tends to prevent or retard deterioration. 21 C.F.R. § 101.22(a)(5).

8. The statement of "No Artificial Colors, Flavors or Preservatives" is false, deceptive and misleading because the Product contains citric acid, an artificial ingredient which serves multiple preservative functions.

INGREDIENTS: APPLE JUICE FROM CONCENTRATE (FILTERED WATER, APPLE JUICE CONCENTRATE), CITRIC ACID (FOR TARTNESS), NATURAL FLAVOR.

**INGREDIENTS:** APPLE JUICE FROM CONCENTRATE (WATER, APPLE JUICE CONCENTRATE), CITRIC ACID (FOR TARTNESS), NATURAL FLAVOR.

**I.    CITRIC ACID IS ARTIFICIAL**

9. Consumers understand natural consistent with its dictionary definition as existing in

or caused by nature and not made or caused by humankind.

10. Consumers consider artificial as made or produced by humans rather than occurring naturally, especially as a copy of something natural.

11. Until demand outstripped supply in the early twentieth century, the only citric acid was natural, from citrus fruit.

12. For over a hundred years, the production of citric acid has not been natural because it is made beginning with fermentation from molasses from and the *Aspergillus niger* mold.

13. The result is a broth containing citric acid, which must be recovered through numerous chemical reactions and using chemical compounds.

14. These include treating the filtrate with lime solution or calcium carbonate.

15. This chemical reaction forms tri-calcium citrate tetra hydrate, that is treated with sulfuric acid in acidolysis reactors.

16. The citric acid is then purified by passing through columns of activated charcoal and ion exchangers.

17. The purified solution is evaporated to produce citric acid crystals that are dried and packaged for sale.

18. While fermentation may be in theory a natural process, the multiple chemical reactions, synthetic mineral salts and synthetic reagents required for extracting citric acid mean it is not a natural preservative, but an artificial one.

## II.   CITRIC ACID FUNCTION

19. A preservative does more than keeping a food safe from dangerous microorganisms and extending shelf-life.

   A. Food Safety

20. Apple juice has several qualities which help protect it from growth of microbial organisms that can cause harm and spoilage.

21. First, it is mildly acidic compared to other juices with a pH between 3.5 and 4.4.

22. This acidic environment makes it difficult for microorganisms to survive.

23. Second, apple juice is heat pasteurized to destroy biological organisms.

24. However, these two factors are not always entirely effective because some pathogens are only weakened.

25. The addition of citric acid serves multiple preservative functions related to the safe consumption of apple juice after it leaves a processing facility and before being consumed.

26. First, by adding what one preservative manufacturer calls "the most commonly used acidulant in the industry," citric acid increases the acidity of apple juice, lowering its pH and making it less conducive to microbial organisms.

27. Second, an antimicrobial agent, citric acid prevents the growth and production of toxic molds known to exist in apple juice such as *Aspergillus parasiticus* and *A. versicolor*.

B. Maintain Product Quality

28. Enzymatic browning is a natural process which results in negative effects on color, taste, flavor, and nutritional value of apple juice.

29. This issue is addressed by the use of anti-browning agents, such as acidulants, chelating agents, antioxidants, and enzyme inhibitors.

30. Apple juice is highly susceptible to enzymatic browning due to the presence of polyphenoloxidase ("PPO").

31. Numerous academic and industry studies confirm citric acid's effectiveness in inhibiting the activity of polyphenoloxidase and preventing enzymatic browning.

32. First, because polyphenol oxidase activity thrives with higher pH levels, adding the acidulant of citric acid to lowers the pH of apple juice inactivates PPO.

33. Second, because the PPO enzyme contains copper, citric acid functions as a chelating agent by binding to metal cofactors in its enzyme structure to suppress PPO activity.

34. Third, because PPO thrives with oxygen, citric acid's role as an antioxidant reduces enzymatic browning by preventing oxidation.

35. By preventing enzymatic browning, citric acid preserves the Product by preventing it from spoiling prematurely, so it is consumable and shelf-stable for a longer period of time after being made.

36. By preventing the negative effects of PPO on the Product's color, taste, flavor, and nutritional value, consumers will believe it is higher quality than it is, even though this is achieved by using a chemical preservative.

## III. LABELING MISLEADING

37. Federal and identical state law require that foods containing chemical preservatives disclose this in a way likely to be read by consumers. 21 C.F.R. § 101.22(c).

38. Consumers are misled because the label states, "No Artificial Colors, Flavors or Preservatives," even though the Product contains citric acid, an artificial ingredient which fulfills numerous preservative functions.

39. In 2010, the FDA warned a company selling pineapple products which failed to truthfully disclose "they contain[ed] the chemical preservative[s] [] citric acid [because] their label[s] fail[ed] to declare th[is] preservative with a description of [its] function" as a preservative, such as slowing spoilage or promoting color retention.

40. Where a chemical preservative is used, it must be accompanied by a parenthetical in

5

the ingredient list which describes its function, such as "'preservative', 'to retard spoilage', 'a mold inhibitor', 'to help protect flavor' or 'to promote color retention'." 21 C.F.R. § 101.22(j).

41. Instead of identifying citric acid's function as a preservative or any of the other examples provided, Defendant's parenthetical declaration that it is used "FOR TARTNESS" is misleading and contrary to law.

42. While the relevant regulation allows the description of a preservative to reference its effect on flavor, a consumer who even views the ingredient list will not know that the "tartness" is provided to maintain and restore the Product's taste.

43. They will just think the citric acid impacts the Product's flavor, which is true, but also misleading because it fails to disclose it requires this ingredient to maintain, preserve and protect its flavor from deteriorating.

44. As a result of the false and misleading representations, the Product is sold at a premium price, $4.99 for ten six ounce pouches, excluding tax and sales.

## Jurisdiction and Venue

45. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

46. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

47. Plaintiff is a citizen of New York.

48. Defendant is a Pennsylvania limited liability company.

49. Defendant's sole member is a citizen of Delaware and Illinois.

50. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

51. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of stores and over the internet, in the States Plaintiff seeks to represent.

52. Venue is in this District with assignment to the Manhattan Courthouse because the challenged statements were presented to Plaintiff in Bronx County which is where she learned they were false and/or misleading.

### Parties

53. Plaintiff Eboni Forbes is a citizen of Bronx, Bronx County, New York.

54. Defendant Kraft Heinz Foods Company is a Pennsylvania limited liability company with a principal place of business in Pittsburgh, Pennsylvania, Allegheny County.

55. Defendant's sole member is Kraft Heinz Intermediate Corporation II, a Delaware corporation with a principal place of business in Illinois.

56. Defendant is a leading seller of children's juice drinks.

57. Plaintiff purchased the Product at stores including but not necessarily limited to Fine Fare Supermarket, 1136 Ogden Ave, Bronx, New York 10452, in the fall and/or winter of 2022, and/or among other times, at or around the above-referenced price.

58. Plaintiff sought a juice beverage without artificial preservatives.

59. Like many Americans, Plaintiff avoids artificial preservatives because she believes they may be detrimental to health and are not natural.

60. Plaintiff did not know citric acid fulfilled all of the preservative functions described here.

61. Plaintiff paid more for the Product than she would have had she known the representations and omissions were false and misleading, or would not have purchased it.

62. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

## Class Allegations

63. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of South Dakota, Wyoming, Idaho, Alaska, Iowa, Mississippi, Arkansas, South Carolina and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

64. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

65. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

66. Plaintiff is an adequate representative because her interests do not conflict with other members.

67. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

68. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

69. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## New York General Business Law ("GBL") §§ 349 and 350

70. Plaintiff incorporates by reference all preceding paragraphs.

71. Plaintiff expected the Product would not contain artificial preservative ingredients.

72. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

73. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

74. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

75. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

76. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it would not contain artificial preservative ingredients.

77. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

78. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which

was the avoidance of artificial additives like chemical preservatives.

79. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it would not contain artificial preservative ingredients.

80. Defendant's representations affirmed and promised that the Product would not contain artificial preservative ingredients.

81. Defendant described the Product so Plaintiff believed it would not contain artificial preservative ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

82. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

83. This duty is based on Defendant's outsized role in the market for this type of product, the leading seller of juices to parents with school-age children.

84. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

85. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

86. Defendant received notice and should have been aware of these issues due to complaints by consumers and third-parties, including regulators and competitors, to its main offices and through online forums.

87. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

88. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the

promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would not contain artificial preservative ingredients.

89. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected that it would not contain artificial preservative ingredients, and she relied on its skill and judgment to select or furnish such a suitable product.

### Fraud

90. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would not contain artificial preservative ingredients.

91. Defendant's actions evince a detailed knowledge of the labeling regulations by using the parenthetical descriptor regarding tartness with respect to complying with a declaration of its preservative functions.

92. Defendant was aware of the chemical reactions and synthetic reagents used to produce citric acid.

### Unjust Enrichment

93. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

  1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;
  2. Awarding monetary, statutory and/or punitive damages and interest;
  3. Awarding costs and expenses, including reasonable attorney and expert fees; and

4. Other and further relief as the Court deems just and proper.

Dated: January 2, 2023

                                              Respectfully submitted,

                                              /s/ Spencer Sheehan
                                              Sheehan & Associates, P.C.
                                              60 Cuttermill Rd Ste 412
                                              Great Neck NY 11021
                                              (516) 268-7080
                                              spencer@spencersheehan.com